UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DURELL T. CRAIN, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-95-PPS-JEM |
| CHRISTINA REAGLE, *et al.*, | |
| Defendants. | |

## **OPINION AND ORDER**

Durell T. Crain, a prisoner without a lawyer, filed an amended complaint and a motion seeking a preliminary injunction, alarmingly titled as "Urgent/Emergency Motion for Court to Take Notice/Immediate Action on Defendant's Continuing Act's [sic] of Placing Plaintiff Life/Health in Danger and Order a[n] Immediate Transfer to the P.C.U./out of W.C.U. Due to His Sentencing Modification on 2-28-2025." [DE 9; DE 5]. Crain tells me there is a plot to kill him, and he is being housed with an inmate who was involved with the plot to murder him. He also alleges that guards tell other inmates he is a snitch, further endangering him. Finally, he alleges that inmates are trying to kill him by smoking illicit substances in the unit, knowing Crain has trouble breathing.

Crain seeks an immediate transfer to the Indiana State Prison protective custody unit until arrangements can be made to transfer him to an out of state prison in a state that is not near Indiana. He further asks that only the IDOC central office staff and transporting officers be permitted to know the location where he will be housed.

Back in February, I granted Crain leave to proceed against Warden Smiley in his official capacity to obtain permanent injunctive relief to protect him from attacks by other inmates, as required by the Eighth Amendment. [DE 8]. All other claims were taken under advisement for later screening, as required by 28 U.S.C. § 1915A. [*Id.*] I ordered Warden Smiley to respond to the request for preliminary injunction and granted Crain an opportunity to file a reply. The matter is now fully briefed. [DE 25; DE 30; DE 31]. Crain has also filed a slew of other motions. [DE 26, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43].

## Crain's Motion for Preliminary Injunction

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent

with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, injunctive relief needs to "be narrowly drawn" because "prison officials have broad administrative and discretionary authority over the institutions they manage." *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets, and citations omitted).

Crain claims that there is a plot to murder him, and prison officials have not taken adequate steps to protect him. Of course, the constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). But when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). This means, liability is imposed on prison officials only if they are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Being lousy at your job by exercising "poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and imminent risk of

3

serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). But general requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

In response to the motion for preliminary injunction, Warden Smiley denies that there is any plot to murder Crain. Yet, curiously, Crain is housed in restrictive housing, in a single-man cell. The door is only opened for official purposes, including transfers and medical emergencies. Only one inmate is transferred at a time, reducing the likelihood that an inmate will be attacked while out of their cell. Two or three staff members participate in each transfer. The inmates are shackled during the transfer. The corridors outside the cells are monitored by video surveillance for safety reasons. While Crain speculates that there are plans to move him based on things he overhears in the unit, Warden Smiley asserts that there are no plans to remove Crain from restrictive housing.

Given the safety measures in place, it is not necessary for me to resolve the dispute about whether there is a plot to murder Crain. Even if such a plot exists, Crain cannot demonstrate a reasonable likelihood of success on the merits of his Eighth Amendment claim, because Warden Smiley has taken reasonable steps to secure his safety by placing him in restrictive housing, in a single man cell, where he is not removed without two or more guards accompanying him. Admittedly, these measures do not absolutely ensure Crain will suffer no harm, but no prison can offer Crain that

kind of assurance. "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

One of the ways Crain alleges that inmates are attempting to murder him is by smoking or burning things that create smoke, which bothers him due to his health conditions. To call these actions an attempt to commit murder strikes me as a stretch, to say the least. The prison's policies prohibit smoking, and while some inmates may obtain contraband materials and smoke despite these policies, the record before me does not suggest that this is a widespread problem. Furthermore, when Crain complained about smoke impacting his breathing, he was moved to a dorm that Crain admits has less smoke. Thus, even if there is a plot to murder Crain by smoking near him, the warden's response to the threat has been reasonable.

In sum, Crain has not come close to shouldering his burden of demonstrating that he is reasonably likely to prevail on the merits of his Eighth Amendment claim. He also hasn't established that irreparable harm will result if an injunction does not issue. Given the safety measures in place, the possibility of future harm is speculative at best. Therefore, I will deny the requests for preliminary injunctive relief.

### Crain's Other Motions

Crain has filed many motions with this court in the short time since I ordered briefing on the request for a preliminary injunction. [DE 26, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 46]. Most of these motions ask the court to take notice of various facts. Crain does not generally use the term "judicial notice" in his motions, but that best

characterizes what he is requesting. A court may take judicial notice of adjudicative facts if they are generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

Almost all the allegations in Crain's motions to take notice are not facts that are either generally known or capable of accurate and ready determination. To the extent they are, he is asking that I take notice of when something was filed, and that is not necessary as the docket in this case already reflects that information. Therefore, each of Crain's motions to take notice [DE 26, 32, 34, 36, 37, 39, 40, 42, 43, 46] will be denied.

Let me pause here for a moment to admonish Mr. Crain: now that the court has explained to Crain that his multiple motions to take notice are inappropriate, the court expects that he will <u>stop filing such motions</u>. If he does not, they will be viewed as an abuse of the judicial process and he may be subject to sanctions, including but not limited to a monetary penalty, dismissal of this case, or a ban on filing in this court.

There are a number of other motions that Crain has filed that need to be addressed in order to clean up the docket. First is Crain's Motion to Substitute Party. [DE 33]. In this motion, Crain argues that the Commissioner of the I.D.O.C. should be substituted for Warden Smiley because Warden Smiley lacks the authority to grant the relief he is seeking; transfer to I.S.P.'s one man cell protective custody unit pending transfer to an out of state prison not near Indiana. The question before the court in deciding Crain's request for a preliminary injunction was whether his placement complies with the Eighth Amendment, and Warden Smiley is best positioned to address

6

the current risks associated with Crain's placement. Because a preliminary injunction will not be granted, the scope of the warden's authority to facilitate the broad relief Crain sought is not at issue. Therefore, the motion [DE 33] will be denied.

Additionally, Crain filed a "Motion Notifying Court of Wrong Date Placed on 2nd Reply and Motion's Sent on 3-17-2025 to E-file." [DE 35]. In this motion, Crain notes that he mistakenly dated several motions March 16, 2025, when they should have been dated March 17, 2025. While the court appreciates Crain's desire to be accurate, this mistake is a trifle, and the motion was not necessary. Therefore, the motion [DE 35] will be denied.

Crain's next motion is a mouthful. It is a "Motion for Court to Order the I.D.O.C. Commissioner/State for a Polygraph Test on Plaintiff, Defendant's Nurse Hickman, Sgt. Burk, C.O. Clemonds, C.O. Gram, C.O. Whitticker, Non Defendant Nurse Ellis, & Several Other Non Defendant, as of now, W.C.U. Staff Worker's Plaintiff will inform the Deputy Attorney General After Reviewing Picture's, who Plaintiff Personally Heard Fraternize & Knows about the Murder Plot on his life & Threats on his Family Life, but Conspires to not Inform I & I, & After the Test, Court Review of the Results, Grant of Plaintiff Injunctive Relief, Private Conversation with Attorney General / Deputy Attorney General, Plaintiff will Dismiss this Complaint." [DE 41]. In essence, Crain is telling the court that he will agree to drop this lawsuit if the preliminary injunction he seeks is granted. That isn't how this works. An injunction can only be granted if Crain sustains his burden of demonstrating it is warranted. As already explained, Crain has not met his burden. Therefore, this motion [DE 41] will be denied. Crain is welcome to

communicate with counsel for defendant about a possible settlement that includes negotiating his placement, but settlement discussions between the parties are not relevant to my determination of whether a preliminary injunction is warranted.

### Stay Pending Screening

Now that I have resolved the request for a preliminary injunction, the remainder of Crain's amended complaint needs to be screened. **Until then, this case will not move forward, and no further filings are required by either party.** Therefore, this case will be **STAYED pending screening**. I ask that Crain remain patient; this case was expedited to address the urgent nature of Crain's allegations, but that request is now resolved. Crain needs to understand that there is a queue in screening prisoner litigation. Absent something extraordinary, I work on a first filed, first addressed approach. This means that other cases filed before this one will be addressed before I can get to Crain's. Crain is cautioned that continuing to file motions will not expedite this case. I have many cases. This case is important, but so are each of the others. As I noted above, filing repetitive motions is an abuse of the judicial process and can be sanctioned.

For these reasons, the Court:

(1) **DENIES** Durrell T. Crain's requests for preliminary injunctive relief contained in his amended complaint [DE 9] and his "Urgent/Emergency Motion for Court to Take Notice/Immediate Action on Defendant's Continuing Act's [sic] of Placing Plaintiff Life/Health in Danger and Order a[n] Immediate Transfer to the P.C.U./out of W.C.U. Due to His Sentencing Modification on 2-28-2025" [DE 5];

8

(2) **DENIES** Durrell T. Crain's "Motion for Court to Take Notice of Plaintiff Filing Reply to Warden's Response and Asking for his Legal Mail/Material Upon Arrival when he's Transferred" [DE 26];

(3) **DENIES** Durrell T. Crain's "Motion for Court to Take Notice of Plaintiff Submitting First Reply on 3-11-2025, the Delay in Receiving the Reply, and Making Attached Reply His Reply & Adding the Exhibits in the 3-11-2025 Reply to the Attached Reply if the Court Receive the 3-11-202" [DE 32];

(4) **DENIES** Durrell T. Crain's "Motion to Substitute Party" [DE 33];

(5) **DENIES** Durrell T. Crain's "Motion for Court to Take Notice Motion" [DE 34];

(6) **DENIES** Durrell T. Crain's "Motion Notifying Court of Wrong Date Placed on 2nd Reply and Motion's Sent on 3-17-2025 to E-file" [DE 35];

(7) **DENIES** Durrell T. Crain's "Motion for Court to Take Notice of Plaintiff Hearing Inmate's say he was being moved to B-pod, a heavy smoking pod and offender's aware of the murder plot and exhibit A Attached" [DE 36];

(8) **DENIES** Durrell T. Crain's "Emergency Motion for the Court to Take Notice and any other relief this court feels appropriate of defendants/officers conspiring to have plaintiff removed from a[n] extremely limited smoking block with his neighbor characteristics to a smoking block" [DE 37];

(9) **DENIES** Durrell T. Crain's Motion for Court to Take Notice of Officers & Inmates Being Aware of Plaintiff Listening & Reporting I.I. to the Court & Purposely

Saying Things to Cause Plaintiff Mental, Emotional, & Psychological Stress & Look Like he's Lying to Cause Plaintiff to be Placed in Danger while in/out of Prison" [DE 39];

(10) **DENIES** Durrell T. Crain's "Motion for Court to Take Notice of W.C.U. Staff/Case Worker Mrs. Shepard Denying Plaintiff Writing Utensil's in Order to Attempt to Deny his Access to the Court" [DE 40];

(11) **DENIES** Durrell T. Crain's "Motion for Court to Order the I.D.O.C. Commissioner/State for a Polygraph Test on Plaintiff, Defendant's Nurse Hickman, Sgt. Burk, C.O. Clemonds, C.O. Gram, C.O. Whitticker, Non Defendant Nurse Ellis, & Several Other Non Defendant, as of now, W.C.U. Staff Worker's Plaintiff will inform the Deputy Attorney General After Reviewing Picture's, who Plaintiff Personally Heard Fraternize & Knows about the Murder Plot on his life & Threats on his Family Life, but Conspires to not Inform I & I, & After the Test, Court Review of the Results, Grant of Plaintiff Injunctive Relief, Private Conversation with Attorney General / Deputy Attorney General, Plaintiff will Dismiss this Complaint" [DE 41];

(12) **DENIES** Durrell T. Crain's "Emergency Motion for the Court to Take Notice and any other relief this court feels appropriate of defendants/officers conspiring to have plaintiff removed from a[n] extremely limited smoking block with his neighbor characteristics to a smoking block" [DE 42];

(13) **DENIES** Durrell T. Crain's Motion for Court to Take Notice of Motion Attached Being His 2nd Motion Filed (Duplicate) [DE 43];

(14) **DENIES** Durrell T. Crain's "Urgent/Emergency Motion for the Court to Take Notice & Any Other Relief This Court Feels Appropriate of I.D.O.C./I.D.O.C. Staff

Retaliatory Acts & Continuing to Place Plaintiff Life in Danger with Exhibit A" [DE 46]; and

(15) **STAYS** this case pending screening of the remainder of Durrell T. Crain's Amended Complaint [DE 9].

**SO ORDERED**.

ENTERED: April 14, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT